Ivy **FEATHERSTONE,** Plaintiff–Appellant,

v.

**COLUMBUS CITY SCHOOL, DISTRICT BOARD OF EDUCATION,** Defendant–Appellee.

No. 03–4039.

United States Court of Appeals, Sixth Circuit.

March 12, 2004.

---

Ivy Featherstone, Columbus, OH, pro se.

Richard W. Ross, Means, Bichimer, Burkholder & Baker, Columbus, OH, for Defendant–Appellee.

Before: MARTIN, CLAY, and CUDAHY,* Circuit Judges.

## ORDER

Ivy Featherstone, a pro se Ohio resident, appeals a district court judgment dismissing his civil rights action alleging violations of his First and Fourteenth Amendment rights. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Seeking monetary, declaratory, and injunctive relief, Featherstone sued the Columbus City School District Board of Education contending that he was denied his constitutional right to speak at various school board meetings. The district court subsequently granted summary judgment to the Board. On appeal, Featherstone contends that the district court erred by refusing to hear his evidence, that the district court erred by not ordering the Board to take his deposition, and that the district court erred in not demanding the Board to file an affidavit concerning the authenticity of a tape.

The district court's judgment is reviewed de novo. *See Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In applying the summary judgment standard, the court must review all material supplied, including all pleadings, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106

---

* The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Anderson,* 477 U.S. at 249–50.

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324. The nonmoving party must do more than show that there is a metaphysical doubt as to the material issue. *See Matsushita,* 475 U.S. at 586. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Anderson,* 477 U.S. at 249–50.

The following facts are undisputed. Featherstone is a retired school teacher who was employed by the Columbus City School District for twenty-nine years. Since 2000, Featherstone has been a regular speaker in the public participation portion of the Board's monthly meetings. The dispute arises from the Board's alleged treatment of Featherstone at board meetings held on March 7, 2000; January 2, 2001; February 20, 2001; June 4, 2002; and October 1, 2002.

### A. March 7, 2000, Board Meeting

Featherstone alleged that the Board violated his First Amendment rights at the March 7, 2000, meeting because it adopted a policy whereby speakers were directed to refrain from mentioning, by name, members of the Board and others during their public comment. The Board admitted that it briefly adopted such a policy, but that the policy was quickly rescinded after a temporary restraining order prohibiting its enforcement was issued in a case brought by another speaker. Despite the policy, Featherstone stated in his deposition that he was permitted to speak uninterrupted for his allotted time, that he was permitted to mention the district's superintendent, that he was permitted to mention the vice president of the Board by title, and that he was permitted to mention the board president by name. Although Featherstone stated that no action was taken against him in response to his speech, Featherstone claims that he was harmed because "[he] couldn't give [his] speech the way [he] wanted to because [he] was not able to call Board members by name," and "it was humiliating and created mental anguish because [he] was not able to concentrate on what [he] wanted to say."

### B. January 2, 2001, Board Meeting

In his deposition, Featherstone stated that he signed-up to speak at the January 2, 2001, meeting, and was allotted time during the public participation period. When he was called to speak, Featherstone passed on the opportunity. Subsequently, after other individuals had made their presentations, Featherstone changed his mind and asked the Board for permission to speak. The Board President, Stephanie Hightower, initially denied Featherstone's request because his allotted time had passed. The Board voted to allow Featherstone the opportunity to speak uninterrupted at the meeting. Although he was allowed to speak at the January 2, 2001, meeting without interruption, Featherstone claimed that the Board violated his First Amendment rights by first voting on the matter before giving him permission to

do so. Featherstone alleged that the vote placed him "under emotional stress and mental duress" because it subjected him to "ridicule[ ] right there in front of the public."

C. February 20, 2001, Board Meeting

In January of 2001, the Board instituted a policy whereby public participation at the monthly meeting would subsequently be limited to items on the Board's agenda. On February 20, 2001, Featherstone signed-up to speak at the Board meeting regarding the resignation of board member Dr. Robert Teater, which was an item on the Board's agenda. Featherstone began his speech by thanking Dr. Teater for his resignation, but then promptly moved into other topics unrelated to the topic on which Featherstone had signed-up to speak. In response to his digression, Featherstone was briefly interrupted once by Board President Hightower who stated: "Mr. Featherstone, it says you're going to speak on—you're not speaking on the resignation of Dr. Teater." No further comment or interruption was made. Aside from the single comment by President Hightower, Featherstone was permitted to speak unhindered for his allotted time. Featherstone alleged that this interruption violated his First Amendment rights.

D. June 4, 2002, Board Meeting

On June 4, 2002, Featherstone spoke for his allotted time without interference or interruption. Featherstone alleged that the Board violated his First Amendment rights during this meeting because Board President Hightower "wasn't paying attention to anything [he] said" at that meeting, but was busy talking to someone else when Featherstone was speaking.

E. October 1, 2002, Board Meeting

At the October 1, 2002, board meeting, Featherstone was permitted to speak for the entire allotted time without interruption. Featherstone claimed that his constitutional rights were violated because "no one was paying attention and they were laughing and joking while I was talking which was humiliating."

A school board meeting, when opened to the public, is a limited public forum for discussion of subjects relating to the operation of the schools. *See City of Madison Joint Sch. Dist. No. 8 v. Wis. Employment Relations Comm'n*, 429 U.S. 167, 175–76, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976). When a school board sits publicly to conduct public business and to hear the views of citizens, it may not discriminate among speakers on the basis of the content of their speech, although it may confine its meeting to specified subject matter. *Id.* Furthermore, the government may place limitations on the time, place, and manner of access to such forums, so long as the restrictions are content neutral and narrowly tailored to serve a significant governmental interest. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

■ Featherstone argues that the district court erred in denying him the opportunity to present his case and by not insisting that the Board take his deposition. However, as the record establishes, the district court relied on Featherstone's deposition to decide the case. Featherstone's claim that he was denied the opportunity to present his case conflicts with the district court record. Featherstone was deposed by the Board and allowed to explain his dispute and the evidence he believed established the violations of his constitutional rights. It was based on Featherstone's own testimony that the district court concluded that the Board had not violated Featherstone's constitutional

rights. Therefore, Featherstone's contentions that he was denied any opportunity to present his evidence to the district court or to be deposed are meritless.

■ Finally, the Board's conduct did not violate Featherstone's constitutional rights. The facts, as established by Featherstone's deposition, show that the Board did not impair Featherstone's constitutional rights in any manner. *Id.* The Board's actions cannot be construed as violating Featherstone's constitutional rights.

Accordingly, we affirm the district court's judgment. Rule 34(j)(2)(C), Rules of the Sixth Circuit.