Shawn MAJORS, Plaintiff–Appellant,

v.

CITY OF CLARKSVILLE,
et al., Defendants,

Ray Macias, Task Force Agent, individually and in his official capacity; Vince Lewis, Task Force Agent, individually and in his official capacity; Johnny Ransdell, Task Force Agent, individually and in his official capacity; Brad Crowe, Task Force Agent, individually and in his official capacity; Bert Clinard, Task Force Agent, individually and in his official capacity; Tim Anderson, Task Force Agent, individually and in his official capacity, Defendants–Appellees.

No. 03–5386.

United States Court of Appeals,
Sixth Circuit.

Sept. 22, 2004.

David E. Danner, Nashville, TN, for Plaintiff–Appellant.

William L. Deneke, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, Lewis S. Yelin, U.S. Department of Justice Appellate Staff, Civil Division, Washington, DC, for Defendants–Appellees.

Before GUY and SUTTON, Circuit Judges; and CARR, District Judge.*

PER CURIAM.

Plaintiff, Shawn Majors, appeals from the entry of summary judgment in favor of six individual defendants in this civil rights action brought under 42 U.S.C. §§ 1983 (in reality a *Bivens* claim under the Fourteenth Amendment) and 1985. Defendants Ray Macias, Vince Lewis, Johnny

---

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

Ransdell, Brad Crowe, Bert Clinard, and Tim Anderson are police officers who were acting as deputized Task Force Agents by the Drug Enforcement Administration (DEA) at all times relevant to this action. Plaintiff alleged that the defendants violated, and conspired to violate, his Fourth Amendment rights through the knowingly false testimony given before the grand jury that resulted in his arrest for possession with intent to distribute crack cocaine on October 13, 1999.

On cross-motions for summary judgment, the district court found plaintiff had failed to establish any connection between these defendants and the allegedly false grand jury testimony by DEA Special Agent Everett Tolbert (who was not named as a defendant). Plaintiff argues on appeal that the district court erred with respect to his *Bivens* and § 1985 claims by finding that no inference could be drawn that these defendants participated in a conspiracy to present false testimony to the grand jury or themselves presented false testimony to the gand jury. After review of the record and the arguments of the parties, we can find no error and affirm.

## I.

Plaintiff's claims against the City of Clarksville, its Police Department, its Police Chief, and a handful of DEA Special Agents were dismissed or abandoned. This left claims against the six individual officers who were deputized as Task Force Agents to participate in an investigation with the DEA's Mobile Enforcement Team

(MET) of two drug organizations operating in Clarksville. That investigation culminated in coordinated arrests of 43 individuals, including plaintiff, in early February 2000. Plaintiff and 27 others were charged in federal court, the remaining individuals were charged in state court.[1]

The single count brought against Majors for possession with intent to distribute crack cocaine was based on a controlled buy of crack cocaine to a confidential cooperating source (CS) at an apartment complex in Clarksville, Tennessee, on October 13, 1999. The CS called a pager number that he said belonged to Majors. The call was returned and arrangements were made to buy three ounces of crack later in the day for $3,300. The CS was searched before and after the exchange at the apartment complex, wore a transmitter and backup recording device, was under surveillance during the exchange, and returned with 73.4 grams of crack cocaine. The DEA–6 report reflected that the CS set up the deal with Majors, met with Majors and Octavius Henderson in the parking lot of the apartment complex, and exchanged the money for the crack cocaine.

Majors denied he was present during the transaction and claimed he was playing basketball at the "Red Barn" at the time. Before the indictment was dismissed, Majors's defense counsel discovered a statement on one of the surveillance tapes that supported this claim. Defense counsel's handwritten transcription notes indicate that "Shawn" had gone to the "Red Barn" to "play somebody" for money.[2] The dis-

1. Newspaper articles included in the record indicate that one of the federal defendants filed a motion to dismiss on the grounds of selective prosecution because 41 out of 42 arrestees were black. That motion also requested discovery of an internal memorandum written by a federal prosecutor about the

MET investigation and accusations of "racial profiling." When the federal judge ordered the prosecutor to testify concerning the memorandum, the criminal charges were dropped against all 28 federal defendants.

2. Defendants dispute the significance of the statement, arguing that it was made in re-

trict court assumed without deciding that Special Agent Tolbert testified falsely or with reckless disregard for the truth before the grand jury when he answered "yes" to the question: "[D]oes the recording reflect that Shawn Majors referred to crack cocaine and knowingly engaged in the sale?"

Nonetheless, the district court granted summary judgment to the remaining individual defendants because none of them had testified before the grand jury, assisted Tolbert in preparing to testify, or prepared written reports concerning the drug transaction. Clinard was the only defendant to have prepared a report, but it related solely to the chain of custody for the cocaine obtained in the buy and the audiotapes of the transaction. Anderson was the only defendant present during Majors's arrest, but did not participate in securing either the indictment or the arrest warrant.

The district court concluded that the apparent conflict between the tape recording and Tolbert's testimony could not support an inference that these defendants had supplied false information to the DEA that was, in turn, provided to Tolbert. Specifically, the district court found:

> Plaintiff has shown no causal connection between any activities of these six Defendants and his indictment or arrest. Plaintiff has, for example, provided no evidence that these six Defendants ever heard the tape recording of the drug transaction at issue prior to Plaintiff's indictment. Plaintiff has failed to establish that any of these Defendants participated in the decision to indict or arrest the Plaintiff. Plaintiff has not set forth sufficient affirmative evidence upon

which a jury could reasonably find for Plaintiff against these Defendants.

This appeal followed.

## II.

We review the district court's decision to grant summary judgment de novo. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). In deciding a motion for summary judgment, the court must view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party may not rest on his pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To maintain a cause of action under § 1985(3), the plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir.1994). In addition, the plaintiff must show the conspiracy was motivated by class-based animus. *Id.* Majors's *Bivens* claim rests on the alleged false statements that form the predicate of his § 1985 claim.

In an effort to establish the connection between defendants and the alleged conspiracy, plaintiff argues that the grand jury transcript indicates that Tolbert's tes-

sponse to a question that cannot be heard. Anderson testified that he listened to the tape for the first time after Majors's arrest and

heard the speaker indicate that Majors was still at the "Red Barn."

timony was based on information he received from these defendants. On the contrary, the referenced testimony indicates only that state or local authorities brought Majors to the attention of the MET investigation and that a confidential informant provided information about Majors. We agree with the district court that plaintiff has failed to present evidence that could lead a rational trier of fact to find these defendants joined in a conspiracy to present false information, or themselves presented false information, to the grand jury indicating that plaintiff was present during the drug buy on October 13, 1999.

**AFFIRMED.**