NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0191n.06

No. 09-1695

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 29, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| BENJAMIN WALKER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PAUL EYKE, M.S. Psychologist, in his | ) | COURT FOR THE WESTERN |
| personal and official capacity, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Benjamin Walker, a Michigan prisoner proceeding pro se, appeals a district court judgment dismissing his civil rights action filed under 42 U.S.C. § 1983. Seeking damages and equitable relief, Walker sued a psychologist with the Michigan Department of Corrections, Paul Eyke, alleging that Eyke was deliberately indifferent to his serious medical needs and violated his rights under the Eighth Amendment. The district court granted Eyke's motion for summary judgment, and Walker appeals that decision. For the reasons set forth below, we affirm the decision of the district court.

I.

Walker has a long history with Michigan's correctional and mental health facilities. He has admitted to substance abuse, including crack cocaine, and he has been repeatedly arrested for breaking and entering, stealing, driving under the influence, and assault and battery. In 1997, Walker reportedly set himself on fire in an attempted suicide. While recovering from his burns, Walker received psychiatric attention and was prescribed Inderal, Zoloft, and Risperdal to control his observed anger. Walker's medication was halted in early 2000 due to his noncompliance with

- 1 -

medical orders. At the same time, Walker was remanded to the Oakland County Jail. The record reveals no subsequent record of Walker's receiving medication after 2000. In November 2000, following an unspecified criminal conviction, Walker was remanded to the custody of the Michigan Department of Corrections ("MDOC"). Walker was observed by a number of MDOC medical professionals at a variety of facilities, none of whom prescribed Walker medication.

Walker's claim arises from circumstances in November 2004, at which time he was in custody at the Alger Maximum Correctional Facility ("Alger") in Munising, Michigan. On November 2, 2004, Walker was examined by Eyke, who served as an MDOC psychologist at Alger. After the examination, Eyke ordered that Walker be placed in a suicide observation cell and that other precautions (such as razor restrictions and observation every fifteen minutes) be taken. Eyke's report from this order identifies Walker as having a "moderate risk of suicide or self-injury." Eyke's order also specifies that medical professionals at Alger were to reevaluate Walker continuously. Walker objected to these precautions, claiming he had never stated any intention to harm himself, and berated Eyke the next time Walker saw him at Alger.

Eyke also referred Walker to the Department of Community Health, where a psychiatrist, Dr. Steven Meyers, evaluated Walker on November 8, 2004. Walker asked Meyers to be placed back on Zoloft because had been feeling "depressed."[1] Meyers also reported that Walker had previously confessed to faking psychiatric symptoms in order to be reassigned in a juvenile facility. Meyers's clinical summary of Walker was that Walker possessed a "vague history of depressive symptomatology and suicidal behavior," and despite his previous prescription of Zoloft "[r]epeated evaluations have failed to demonstrate a clinical order requiring medication." Meyers therefore did not recommend Walker be remedicated but instead recommended the Alger medical staff continue observation as they deemed appropriate.

---

[1] Walker does not appear to have requested the antipsychiotics Risperdal or Inderal at this meeting.

On November 9, 2004, Eyke and Meyers observed Walker in his cell as part of the follow-up evaluation. Walker exhibited "no acute distress" and reported that he had no desire to harm himself. Based on Walker's exhibited demeanor, Eyke and Meyers ordered that the precautions against suicide be discontinued and Walker be returned to routine custody.

Walker filed a grievance with MDOC, claiming that Eyke improperly ordered Walker placed in a suicide observation cell in lieu of medicating Walker; he also claimed that Eyke's order was in retaliation for his request for medication. After Walker's grievance was denied, he initiated this litigation and claimed that Eyke's actions violated his Eighth Amendment right to be free from cruel and unusual punishment. The district court granted Eyke's motion for summary judgment, accepting a magistrate judge's recommendation that Walker had failed to provide any evidence that he had been deprived of adequate medical care. This appeal followed.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when the evidence presented shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation omitted).

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05;

*Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). To succeed on this claim, a plaintiff must prove two separate elements, one subjective and one objective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock*, 273 F.3d at 702.

Assuming without deciding that Walker satisfies the objective component of his Eighth Amendment claim, he still has failed to offer any evidence to satisfy the subjective component of his claim. The subjective element of an Eighth Amendment claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence" but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Walker offers no evidence of a sufficiently culpable state of mind such that any deprivation might be deemed a "punishment." According to his affidavit, Eyke placed Walker in the suicide cell solely because Walker claimed that he was depressed and experienced thoughts of suicide; no evidence in the record suggests that Eyke did anything except act properly as a medical professional. Indeed, Walker's own complaint belies his claim that Eyke was indifferent to his needs. Before being transferred to Alger, Walker had been housed at multiple correctional facilities in Michigan; at each, according to his complaint, he "requested [a] psychiatric evaluation . . . but [was] told that he will not receive such medications." Where others ignored Walker's requests, Eyke appears to have taken pains to address them, placing him in a suicide observation cell until a meeting with a psychiatrist could be scheduled. The only evidence in the record that proposes Eyke was motivated by anything but a desire to provide Walker with proper medical attention is Walker's own conclusory

accusations, which only arose after he was denied medication by Meyers. There is no evidence, therefore, of Eyke possessing a sufficiently culpable mind.

Moreover, any failure to prescribe medication cannot be attributed to Eyke. As a psychologist, Eyke has no authority to prescribe the prescription drugs requested. *See, e.g.*, Dep't of Community Health, Michigan Board of Psychology, *available at* http://www.michigan.gov/mdch ("The practice of psychology does not include the practice of medicine such as prescribing drugs, performing surgery, or administering electro-convulsive therapy."). There is therefore no evidence that Eyke deprived Walker of medication for any malicious reason.

III.

Because Walker has failed to offer any evidence that indicates a deprivation of medical care was due to Eyke's sufficiently culpable mind, the district court's judgment is affirmed.