Richard T. KEEVER, Plaintiff–Appellant,

v.

CITY OF MIDDLETOWN,
Defendant–Appellee.

No. 97–3078.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 27, 1998.

Decided May 29, 1998.

Donald B. Hordes (argued and briefed), Schwartz, Manes & Ruby, Cincinnati, OH, for Plaintiff–Appellant.

Leslie S. Landen (briefed), Middletown, OH, Robert J. Gehring (argued and briefed), Law Firm of Robert J. Gehring, Cincinnati, OH, for Defendant–Appellee.

Before: WELLFORD, RYAN, and SILER, Circuit Judges.

## OPINION

WELLFORD, Circuit Judge.

Plaintiff Richard T. "Tim" Keever was a police officer with the City of Middletown ("City"), and suffered on-the-job-injuries to his neck, shoulders, back, and legs in the late 1980's. In the years following his injuries, he missed an excessive amount of work, and disputes arose about the legitimacy of his absences. In November of 1993, as part of an agreement with the City, just before arbitration on a grievance, Keever resigned from the force and filed for disability benefits, receiving a 45% permanent disability retirement. In August of 1995, Keever filed this action against the City under the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12101, *et seq.*, and the Ohio discrimination statutes, claiming that the City failed to accommodate his disability, unlawfully harassed him about his disability, and constructively discharged him from the force. The magistrate judge granted summary judgment in favor of the City, finding, among other things, that Keever was not "otherwise qualified" for the position sought and Keever now appeals.[1] We **AFFIRM** for the reasons indicated.

Keever was employed by the City of Middletown Police Department ("MPD") as a uniformed police officer for some fifteen years. Except for his sporadic attendance problems, Keever received average to above average performance ratings, and was cited on occasion for bravery on duty.

On several occasions during the mid–1980's, Keever suffered on-the-job injuries while subduing criminal suspects. Keever still claims to suffer from effects of those injuries. Stress, both work-related and otherwise, exacerbates his physical problems, causing depression and pain. Keever also suffers from periodic headaches and from side effects related to medications he takes. He also has experienced domestic problems for some time.

Over many years, Keever was absent from work between 17 and 26 days per year because of his injuries. During the first three quarters of 1993, the period in question, Keever worked 121 days and was absent about 32 days. The parties disagreed about whether Keever could use his injury leave for his absences or whether he had to exhaust his sick leave.[2] Keever, along with his union representative, Magill, filed a grievance protesting the City's handling of Keever's sick leave. Keever states that the confrontation caused by the grievance contributed to the gradual deterioration in his relationship with his superiors.[3] Through a settlement agreement, Keever retired in November of 1993, claiming to be disabled, in exchange for restoration of his sick leave hours which he was allowed to redeem for about $4,600. Keever then applied for and received disability retirement benefits from the Ohio Police Pension and Disability Fund. In support of his application, Keever and his health care providers certified that Keever was permanently and partially disabled. The fund gave Keever a 45% disability retirement. Keever has

---

1. The parties consented to final disposition of this case by a magistrate judge.

2. Generally, the City's injury leave policy provides that an injured employee is entitled to six months "time off because of and following the injury," and is typically used during one block of time. Sick leave, on the other hand, may be

accrued annually and may be used at any time as needed. If an officer reports off sick, he is normally charged with accrued sick time.

3. Keever cites instances in his brief where his superiors accused him of malingering and "goofing off."

made no offer to return the benefits received in the settlement agreement.

After following administrative procedures, Keever filed suit, claiming that his alleged forced retirement constituted an unlawful constructive discharge, in violation of the ADA and the corresponding Ohio disability discrimination statutes. *See* Ohio Rev.Code §§ 4112.02 and 4112.99. He claimed that he was harassed because of his disability and because of his disability-related absences from work. In addition, Keever claims that the department refused to accommodate his disability by not allowing him to work on the 11:00 p.m.–to–7:00 a.m. shift, which he claims is less stressful, or by not transferring him to a detective position, which he claims is also less stressful.[4]

In July of 1996, the City filed a motion for summary judgment. In December of 1996, the magistrate judge entered an order granting the City's motion, concluding:

1. Keever was not "otherwise qualified" for the position, having rejected a reasonable accommodation which would enable him to perform the essential functions of his job;

2. Keever's representation of disability to his pension fund precluded him from establishing that he was "otherwise qualified;"

3. Keever was not constructively discharged, because the City took no adverse action against him; and

4. The evidence fails to establish any hostile environment claim.

■ We review a district court's grant of summary judgment *de novo*. *City Management Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994). In doing so, we must view the evidence and all inferences to be drawn therefrom in a light most favorable to the nonmoving party. *Id.; Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 882 (6th Cir.1996). Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is enti-

tled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In accordance with this standard, we have stated the factual background in a light most favorable to Keever.

■ A plaintiff sets out a prima facie case of disability discrimination if he proves that he is a "qualified individual with a disability," which is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see *Kocsis*, 97 F.3d at 882. The issue here is whether Keever was "otherwise qualified" to perform the essential functions of his position with reasonable accommodation.[5] *Estate of Mauro ex rel. Mauro v. Borgess Medical Center*, 137 F.3d 398, 402–03 (6th Cir.1998) (discussing the "otherwise qualified" requirement); *Monette ·v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1183–84 (6th Cir.1996) (same).

The magistrate judge found that Keever was disabled within the meaning of the Act, but that he was not "otherwise qualified" because he rejected a reasonable accommodation offered by the City that would have enabled him adequately to perform the duties of an officer. Specifically, the City offered to let Keever work the desk job in the department, because the reduced activity might reduce his stress and physical symptoms so that his attendance would improve. The City hoped that this proposed accommodation would have allowed Keever to maintain the same pay and benefits, and his seniority would not have been affected.

Keever, however, did not want to work the desk job, "because it was used as a punishment tool. Another thing is, [he] was wanting to be a police officer out on the street, not inside." Keever thought also that the desk job carried with it less prestige, and he suggested other accommodations that would suit him. First, he asked to do detective

---

4. Though his original complaint contained a claim pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2611, *et seq.*, that claim was withdrawn.

5. It is undisputed that Keever is unable to perform the essential functions of his position without some accommodation.

work, or second, he suggested that he could be placed on what he claimed was a less stressful 11:00 p.m.–to–7:00 a.m. shift, rather than the day shift to which he was assigned. Keever also maintained that he should have been able to choose which shift he preferred because of his seniority. The City rejected Keever's requests. According to his supervisor, Bruck, Keever was looking for a position "where he didn't have to come to work every day," and because his attendance was so erratic, Bruck did not think that the detective position was suitable. The City's policy was to have set shifts for its employees.

■ The district court found that the City's offer of a desk position constituted a reasonable accommodation for Keever's disability. Under the ADA regulations, the employer has the ultimate discretion to choose between effective accommodations. *See* 29 C.F.R. pt. 1630, app. at 415. It is well-settled that "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap*, 84 F.3d 797, 800–01 (6th Cir.1996) (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68–69, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986)). The regulations also provide that if an employee rejects the offered reasonable accommodation "that is necessary to enable the individual to perform the essential functions of the position … the individual will not be considered a qualified individual with a disability." *Id.* at 801 (citing 29 C.F.R. § 1630.9(d)). Keever maintains that the City's offer to provide him with a desk job was not a reasonable accommodation.

■ As indicated above, Keever maintains that the desk job was not a reasonable accommodation for his disability because he believed that the position involved significantly diminished material responsibilities and that it was demeaning. He was of the opinion that it involved less challenges and satisfaction than the job of being an officer on the street. The City, on the other hand, argues that offering Keever the desk job was reasonable as a matter of law because the pay and benefits would have remained the same, and it would have reasonably accommodated the restrictions imposed on Keever due to his disability and spasmodic absences.

Keever relies on *Kocsis* for the proposition that equal pay and benefits are not determinative of the issue, but that they are only factors to weigh in deciding whether assignment to another position is a reasonable accommodation. He argues that the court should consider different factors, such as a less distinguished title, significantly diminished material responsibilities, and others set out in *Kocsis*, 97 F.3d at 886. In *Kocsis*, however, we analyzed not whether a reassignment to a different position was a reasonable accommodation, but whether such reassignment was an adverse employment decision. In fact, we found that Kocsis did not even have a disability. *Id.* at 884. Nevertheless, we assumed for the sake of argument that Kocsis had a disability to address the employer's argument that Kocsis' reassignment to a different position did not constitute a materially adverse action. We held that reassignments without salary or work hour changes ordinarily do not constitute adverse employment decisions for purposes of establishing a prima facie case of discrimination. *Kocsis*, 97 F.3d at 885.

In determining whether an accommodation is reasonable, the employer must consider (1) the particular job involved, its purpose, and its essential functions; (2) the employee's limitations and how those limitations can be overcome; (3) the effectiveness an accommodation would have in enabling the individual to perform the job; and (4) the preference of the employee. 29 C.F.R. § 1630.9(a), appendix. As stated by the lower court, the regulations provide that a disabled employee is not required to accept an accommodation, but if he chooses to reject the accommodation, and he "cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability." 29 C.F.R. § 1630.9(d).

*Hankins v. The Gap, Inc.*, 84 F.3d 797 (6th Cir.1996), is analogous. In that case, the plaintiff suffered from stress-induced migraine headaches. To reduce her chances of getting such headaches, Hankins requested that she be moved to another area of the

employer's warehouse that would be less stressful than her customary area. Rather than transfer her, the employer found that Hankins was more adequately accommodated by the company's leave and medical policies. Hankins was eventually fired, and she sued in federal court claiming that The Gap failed reasonably to accommodate her disability. This court held that the Gap made available reasonable and effective accommodations to Hankins, and that even if Hankins' requested accommodations were also reasonable, the employer had the discretion to choose which accommodation to provide. *Id.* at 800. Similarly, we conclude that the desk job offered to Keever was a reasonable accommodation, although it did not provide him with his *preferred* accommodation.

Keever still claims to suffer from his injuries, and his problems are exacerbated by the routine duties of an "out on the street" police officer. He is restricted to lifting no more than 45–50 pounds. Keever needs a job where frequent absences will not adversely affect the operation of the department, and would allow him to work short shifts. The City claims that Keever's absences caused multiple problems for the department. We find no error in the decision that offering Keever a desk job where his physical and mental responsibilities are significantly reduced, in combination with allowing him to take leave when necessary, is a reasonable accommodation for his type of injury. *See* 29 C.F.R. pt. 1630, app. at 407 (leave time is another form of reasonable accommodation). The City has the discretion to choose whichever reasonable accommodation it sees fit. *See Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011, 1016 (7th Cir.1996) ("ADA does not obligate an employer to provide a disabled employee every accommodation on his wish list.").

Accordingly, we affirm the magistrate judge's determination that Keever was not "otherwise qualified" for his position. Consequently, we need not specifically rule upon the propriety of the magistrate judge's finding that Keever's representation to the Ohio Police and Firemen's Pension and Disability Fund that he was totally disabled precludes him from arguing that he was otherwise qualified to perform his job as a patrol officer. We do consider this a factor, however, in reaching our decision as to whether Keever was otherwise qualified.

 The magistrate judge also found that Keever failed to adduce sufficient evidence to create a genuine issue of material fact regarding whether he was constructively discharged. To maintain this claim, Keever would have to show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Easter v. Jeep Corp.,* 750 F.2d 520, 522–23 (6th Cir.1984). Keever also claimed that he was subjected to a hostile work environment, and that he was harassed by others in the department because of his disability and his disability-related absences. We affirm those findings essentially for the reasons stated by the lower court. There is nothing in the record to show that the City constructively discharged Keever; rather, he simply made a personal decision to resign. Furthermore, Keever has failed to establish any facts concerning whether the harassment he claims took place was severe enough to create an objectively hostile work environment. Conversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress.

In sum, we **AFFIRM** the conclusion of the district court based on its finding that Keever was not "otherwise qualified" for the position of patrol officer, that Keever was not constructively discharged, and that Keever failed to establish a prima facie case of hostile work environment discrimination.