Michael J. SCHULTZ, Plaintiff,

v.

**ALTICOR/AMWAY CORPORATION, Dick DeVos, Steve Ohman, and, Heidi Van de Grift, Defendants.**

No. 1:01–CV–345.

United States District Court, W.D. Michigan, Southern Division.

Nov. 1, 2001.

Michael J. Schultz, Grand Rapids, MI, Pro se.

Paul T. Sorensen, Edward J. Bardelli, Warner, Norcross & Judd, LLP, Grand Rapids, MI, for Defendants.

## *OPINION*

QUIST, District Judge.

Plaintiff, Michael J. Schultz ("Schultz"), filed this action under the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. §§ 12101–12213, against his current employer, Alticor/Amway Corporation ("Alticor"), and certain employees of Alticor (collectively "Defendants"). Schultz alleges that Defendants failed to accommodate his hearing and mobility disabilities

by refusing to permit him to bring a service dog to work, failing to provide assisted listening devices, and failing to provide adequate handicap parking spaces. He further alleges retaliation and hostile work environment in connection with his complaints. Defendants moved to dismiss Schultz's claims for failure to state a claim on which relief can be granted, or in the alternative, for summary judgment.

This matter was originally scheduled for oral argument on the afternoon of September 11, 2001. Because of the tragedies occurring on the morning of September 11, oral argument was, with proper notice, rescheduled to the afternoon of October 29. Defendants' counsel and Defendants appeared for oral argument. Schultz did not appear for oral argument. Defendants then waived oral argument. Therefore, the Court makes its rulings based upon the written record.

### Facts

Schultz was hired by Alticor on March 31, 1997, as a Designer and remains employed by Alticor today. (New Hire Form, Def.'s Br. Supp. Ex. 1.) His basic job duty is to develop detailed design drawings of existing and proposed equipment and facilities layouts. (Job Description, Def.'s Br. Supp. Ex. 2.) Schultz alleges that he has disabilities that cause hearing loss and mobility difficulties. (Compl. ¶ 5; Schultz Aff. ¶ 2.)

Due to his increased hearing loss, Schultz acquired a service dog in November 1998. (Letter from Schultz to DeVos of 4–3–00, Compl. Ex. C.) Around the Christmas holidays in 1999, Schultz requested permission from his supervisor, Mark Hines, to bring his service dog to work with him. (Id.) Hines allowed Schultz to take his service dog to work with him. Shortly after New Years, Schultz was informed that due to com-

plaints from co-workers, he would need to meet with Heidi Van de Grift from Human Resources concerning the service dog. (Id.; Hines Aff. ¶ 3, Def.'s Br. Supp. Ex. 3.) Schultz met with Ms. Van de Grift and Steve Ohman, also from Human Resources, on February 9, 2000. (Van de Grift Aff. ¶ 2.) Schultz told Van de Grift and Ohman that the dog was not necessary for Schultz to perform the essential functions of his job. Thereupon, Van de Grift and Ohman informed Schultz that he should not bring the dog to work. (Compl. ¶ 17a; Ohman 2d Aff. ¶¶ 2, 3; Van de Grift Aff. ¶ 3.)

On March 28, 2000, Schultz sent a letter to Ohman and Van de Grift regarding his hearing loss. (Compl. ¶ 20a; Ohman 2d Aff. ¶ 4.) He requested certain accommodations from Alticor, including: (1) installation of Assistive Listening Systems in all conference rooms and meeting areas, (2) a method to enable him to hear the PA system, (3) replacement of his new phone with the old digital phone with light indicators, and (4) installation of an amplifier for his phone. (Letter from Schultz to Van de Grift and Ohman of 3–28–00, Compl. Ex. E.) Alticor returned the digital phone and had Schultz order a phone amplifier but denied Schultz's other requests. (Compl. ¶ 20a.)

Schultz's other primary dispute with Alticor arose over the adequacy of handicap parking spaces. On August 8, 2000, Schultz sent an e-mail pointing out the lack of handicapped parking spaces near his building. (E-mail from Schultz to Dertz of 8–8–00, Compl. Ex. F; Dertz Aff. ¶ 2.) Steve Dertz responded by pointing out 5 spaces close to his building as well as the availability of shuttle bus stations with handicap spaces nearby. (Dertz Aff. ¶ 2.) Schultz again complained about the lack of adequate spaces on August 28, 2000, and again on September 25, 2000.

(Compl.¶20b.) Schultz was provided with an Alticor handicapped parking sticker and again provided with his available options. (Hembroff Aff. ¶3.). Alticor eventually created a new handicapped parking space solely for Schultz's use. (Celori Aff. ¶4.)

Schultz filed a charge of discrimination with the EEOC on November 20, 2000. The Commission found that his allegations had no evidentiary support and issued a Right to Sue Letter on March 8, 2001.

### Standard

The Court has considered matters outside the pleadings and will treat Defendants' motion as one for summary judgment. Fed.R.Civ.P. 12(b). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Discussion

Schultz alleges failure to make reasonable accommodations, retaliation, and hostile work environment. These claims will be discussed in turn.

## I. Failure to Accommodate

■ In order to establish a prima facie case of disability discrimination, a plaintiff must show that: (1) he has a disability; (2) he was qualified for the job; and (3) he was either denied a reasonable accommodation for his disability or was subject to an adverse employment decision based solely upon his disability. *Roush v. Weastec, Inc.,* 96 F.3d 840, 843 (6th Cir.1996). Defendants have not contested, for the purposes of their motion, the first two elements—disability and qualified for the job. The issue in the pending motion is whether Alticor denied Schultz a reasonable accommodation for his disability.

The Regulations define "reasonable accommodation" as

[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.

29 C.F.R. § 1630.2(*o*)(1)(ii). A "reasonable accommodation" may include, "[m]aking existing facilities used by employees readily accessible to and usable by individuals with disabilities." § 1630.2(*o*)(2)(i). The Regulations go on to suggest an "informal, interactive process" of identifying the limitations and the potential accommodations possible to alleviate those difficulties for the employee. § 1630.2(3).

■ The "reasonable accommodation" must enable the individual to perform the "essential functions" of that position. "Essential functions" are the "fundamental job duties of the employment position the individual with a disability holds or desires." § 1630.2(n)(1). The Sixth Circuit stated in *Keever v. City of Middletown,* 145 F.3d 809 (6th Cir.1998), that "the employer has the ultimate discretion to

choose between effective accommodations." *Id.* at 812 (citing 29 C.F.R. § 1630, app. at 415). According to *Keever*, "[i]t is well-settled that 'an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.'" *Id.* (quoting *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800–01 (6th Cir.1996)). When deciding whether an accommodation is reasonable, the employer is to consider (1) the particular job involved and its essential functions, (2) the limitations of the employee and how they can be overcome, (3) the effectiveness of the accommodation in enabling the individual to perform the job, and (4) the employee's preference. *Keever*, 145 F.3d at 812 (citing 29 C.F.R. § 1630.9(a), appendix).

### 1. No service dog

Schultz alleges in his Complaint that he was not allowed to bring his service dog to work and that this was a denial of a reasonable accommodation for his disabilities. In assessing whether this denial was a failure to comply with the ADA requirement of reasonable accommodation, the Court must determine whether the accommodation sought would aid Schultz in performing the essential functions of his job. *Id.* Schultz's job was that of "designer," which involves developing detailed design drawings of existing equipment and facilities layouts. (Def.'s Br. Ex. 2.) This requires working at an easel or desk on a computer the vast majority of the time. Schultz's contact with other employees is minimal, limited to contacting internal plant managers to obtain information and working with his supervisors. (*Id.*)

■ Schultz has failed to identify in either the Complaint or the Response Brief any function of the job that requires the aid of his service dog. He admits in a letter to Dick DeVos dated April 3, 2000,

that he does not require the service dog at work. "I don't drop think [sic] often enough to have her pick them up (Back problems) so she would not [sic] a great benefit in the office." (Compl.Ex. C.) It is difficult for this Court to imagine what the aid of a service dog would provide Schultz when performing the various duties of his job. He has failed to make out an adequate claim for denial of reasonable accommodation because his service dog is not necessary in carrying out the essential functions of his job.

■ Schultz cites M.C.L. 750.502c, which makes it a misdemeanor for a place of accommodation, including a place of employment, to refuse to permit a person with a service dog to enter. This statute, while evidence of the state's desire to make public places open to those with service dogs, is a criminal statute and does not provide a private right of action. It is inapplicable to a claim brought under the federal ADA for failure to accommodate. Moreover, discrimination disputes arising out of employment are relegated to Title I claims under the ADA.

In his response brief, Schultz attempts to couch the services dog issue under Title III of the ADA, regarding places of public accommodation, instead of a Title I discrimination claim. The Sixth Circuit has ruled, however, that employment discrimination claims are the exclusive province of Title I. *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir.1997)(en banc). According to the court in *Parker*, the structure of the Act clearly demonstrates Congress' intent for Title I to govern claims arising out of employment. *Id.* at 1010–1011. Title III prohibits discrimination on the basis of a disability in the enjoyment of goods and services in places of public accommodation. 42 U.S.C. § 12182. An employee claiming discrimination is not seeking goods and services

under the language of Title III. *Parker*, 121 F.3d at 1011–12.

Therefore, this Court concludes that Title III is not applicable, and Schultz's claim fails to meet the elements of a claim under Title I because the dog was not necessary for the performance of any essential function of Schultz's job.

### 2. Failure to Accommodate Hearing Impairment

Schultz also alleges in his Complaint that Defendants failed to make a reasonable accommodation in regard to his hearing impairment. Specifically, Schultz requested that Active Listening Systems be installed in all conference rooms and auditoriums, that he be given a special phone with light indicators and an amplifier, and that his office be equipped with an Active Listening System. Schultz was subsequently given a digital phone with light indicators and an amplifier. Alticor decided it was not necessary to install an ALS in conference rooms and auditoriums because those facilities were not frequented by Schultz and already contained hearing aid device capabilities.

■ As stated above, to prevail on a claim for failure to make reasonable accommodations, Schultz must demonstrate that the accommodation would aid in the performance of his essential job functions. Like the shortcomings of his claim for the service dog, Schultz fails to allege any accommodation that is necessary for the performance of any of the essential functions of his job. His contact with other personnel is limited, and the nature of his job as a designer does not require assistance for a hearing impairment. Such a condition does not limit Schultz when working on designs for equipment and facilities at a desk or on a computer.

Furthermore, Alticor has accommodated Schultz. Upon Schultz's request, the special phone was installed and an amplifier ordered. (Compl.¶ 20a.) As this Court already pointed out, Schultz is not entitled to the accommodations of his choice.

Under the standards set forth in *Keever*, 145 F.3d 809, which are recited on page 678 of this Opinion, the Court finds the steps taken by Alticor to be reasonable.

Defendants are entitled to summary judgment because Schultz has failed to show that Alticor did not accommodate his hearing disability.

### 3. Inadequate Handicap Parking

Schultz also alleges in his Complaint that Alticor violated Title III of the ADA by failing to provide him with adequate handicap parking spaces. This claim is rejected. ⬥

■ First, as discussed earlier, Title III does not apply to discrimination suits brought by employees against their employers for claims arising out of employment. Second, under a Title I analysis, Schultz has failed to demonstrate that Alticor failed to make reasonable accommodations. The pictures Schultz submits demonstrate adequate handicap parking. (Pl.'s Compl. Ex. A1–A4.) The email correspondence and accompanying affidavits submitted by both parties document Alticor's response to his requests in providing him multiple alternatives, eventually creating a new parking space exclusively for him. Alticor did not fail to make reasonable accommodations.

## II. Retaliation

The ADA's prohibition on retaliation prevents an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ...

under [the ADA]." 42 U.S.C. § 12203(a). To make out a case of retaliation, Schultz must show: "(1) that he engaged in protected activity; (2) that he suffered adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse action." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 814 (6th Cir.1999)(quoting *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir.1997)). The Sixth Circuit has provided examples of what constitutes an adverse employment decision: termination of employment, demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities. *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996).

Schultz makes three allegations of events to support his claim for retaliation: threats of termination, an attempt to reclassify injuries as non-work related, and withholding of pay increases. Because none of these rise to the level of an adverse employment action and there is nothing to indicate a causal connection to any protected activity, Schultz's claim must be dismissed.

### A. Threat of Termination

■ Schultz states in his Complaint that he was threatened with termination after requesting a handicap parking sticker and complaining about the proximity of spaces to his building. According to the Complaint, on September 26, 2000, Schultz's supervisor told him, "I would hate to lose you over this" in reference to his parking space requests. (Compl.¶ 25a.) The Sixth Circuit has ruled, however, that the mere threat of firing is not an adverse employment action. In *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652 (6th Cir.1999), the court addressed a retaliation claim under Title

VII brought by an African–American against his employer. The court concluded that a supervisor's comments regarding the plaintiff's potential termination were too ambiguous to satisfy the adverse action requirement. *Id.* at 662. The employee had faced continuing run-ins with her supervisor over her hairstyles which violated company policy. The supervisor said to her, "you may want to consider if you want to continue working for this company, or if you would rather find employment at a company where you can style your hair however you want." *Id.* at 657. The plaintiff took this as a threat. The court concluded, however, that the evidence was too ambiguous to satisfy the adverse employment requirement. "There is no evidence that [the supervisor] had the authority to transfer or terminate, and the alleged threat merely stated the possibility of transfer or discharge." *Id.* at 662.

*Hollins* is analogous to Schultz's allegations. The statement, "I would hate to lose you over this" from his supervisor is ambiguous and does not rise to the level of an adverse action. It could have been a statement of concern that Schultz would quit his job. It was at most a single statement or threat of adverse action. Assuming, as the Court must, that the statement was a threat of termination, it does not rise to the level of an adverse employment action under *Hollins*. Moreover, there is no evidence that Schultz's supervisor, Hines, had the authority to terminate him.

### B. Reclassification of Injury

Schultz also asserts that Alticor attempted to reclassify an injury he submitted for insurance benefits as a non-work related injury. This claim is unfounded. Schultz submits letters from Disability Advisor Laurie Schmidt regarding medical bills forwarded for payment. (Compl.Ex.

M.) The letters indicate that the doctors involved in both surgeries deemed the operations and conditions to be non-occupational. Given the doctor's statements that the conditions were not work related, the bills were returned to Schultz. There is no indication that this was a reclassification of an injury or an illegitimate denial of a claim for benefits. More significantly, Schultz fails to allege any connection between this event and anything to do with his disability or his engagement in protected activity.

## C. Withholding Pay Increase

Schultz's final allegation in support of his retaliation claim is that he was informed on November 1, 2000, after his annual evaluation, that he would not receive as high a pay increase.

Defendants cite *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir.1997), for the proposition that only ultimate employment actions constitute adverse employment actions, and that a missed pay increase does not fit that requirement. Defendant fails to recognize a split among the circuit courts regarding what constitutes an adverse employment action. Specifically, courts are divided about whether the action must be an ultimate employment action such as hiring, firing, or promoting or whether a mere alteration of the terms or conditions of employment will suffice. The Eighth Circuit has sided with the Fifth Circuit's decision in *Mattern*, stating that only adverse employment actions that "rise to the level of an ultimate employment decision [are] intended to be actionable under Title VII." *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir.1997). The First, Fourth, Ninth, Tenth, and Eleventh Circuits, however, have all held that protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions. *See Wyatt v. City of Boston*, 35 F.3d 13, 15–16 (1st Cir.1994)(stating that actions other than discharge are covered by Title VII's anti-retaliation provision and listing as examples, "employer actions such as demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees")(internal citation omitted); *Von Gunten v. Maryland*, 243 F.3d 858, 864–65 (4th Cir.2001)(explicitly rejecting *Mattern* and requiring, "evidence that the challenged discriminatory acts or harassment adversely affected, 'the terms, conditions, or benefits' of the plaintiff's employment."); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987)(holding that such non-ultimate employment decisions as "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions'"); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984–86 (10th Cir.1996)(construing Title VII's anti-retaliation provision to reach beyond ultimate employment decisions and protect an employee from a malicious prosecution action brought by former employer); *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998)(summarizing circuit cases and stating its decision to join the majority in holding that adverse employment action is not limited to ultimate employment decisions).

Judging from the examples of adverse employment actions listed in *Kocsis*, which include a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities, it appears to this Court that the Sixth Circuit would rule along with the majority of circuits that an adverse employment action is not limited to ultimate employment decisions such as hiring, firing, and promotion. This Court thus does not share Defendants' haste in concluding that withholding a pay

increase is not an adverse employment action under the Act.

■ Schultz's complaint does fail, however, to make out a claim for retaliation based on his smaller pay increase. First, Schultz seems to admit that the pay increase was not withheld altogether as the caption of the paragraph in the Complaint would indicate. The complaint states that, "I was being given less of an increase" because of his poor evaluation. Less than what? Less than other employees? Less than he would have liked? Less than the previous year? There is no allegation here concerning the materiality of the withholding, and it appears·that Schultz did receive some level of pay increase.

Second, Schultz fails to make any causal connection between his engagement in protected activity and the pay increase. The evaluation sheets submitted indicate a benign reason for the poor evaluations, and Schultz fails to make any allegation of a connection beyond a conclusory statement of retaliation. (Compl.Ex. O.) Thus, Schultz has failed to state a claim for retaliation based on the alleged withholding of a pay increase and dismissal is appropriate.

### III. Discrimination in Benefits

Schultz states in his Complaint that the lifetime cap under Alticor's medical plan for employees with hearing problems is discriminatory because medical equipment and other costs incurred by those employees with other disabilities are supplied without a cap on benefits. (Compl.¶ 26.)

■ This claim must also be dismissed because the ADA does not mandate equality between individuals with different dis-abilities, but rather between the disabled and the non-disabled. *Parker*, 121 F.3d at 1015. As long as all employees have access to the health insurance and medical coverage plan, under *Parker* neither the Defendant nor the plan are discriminatory under the ADA. The *Parker* court cites *Traynor v. Turnage*, 485 U.S. 535, 548, 108 S.Ct. 1372, 1382, 99 L.Ed.2d 618 (1988), a case involving the Rehabilitation Act, in which the Supreme Court stated, "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." *Parker*, 121 F.3d at 1016.

The ADA does not require that those people with hearing impairments be treated the same as those with multiple sclerosis, blindness, or any other kind of impairment or disability. Schultz's claim must be dismissed because the discrimination alleged in Alticor's benefit plan is not actionable.

### IV. Hostile Work Environment

Schultz's complaint alleges that he was subject to a hostile work environment. To support this claim he cites "[t]he continual refusal to comply with the laws," the lack of action taken in response to his requests, and the threat of firing. (Compl.¶ 28.)

Since the Court has found no basis for his other claims, and this claim rests solely on Defendants' conduct in those other allegations, this claim must too be dismissed.

### V. Individual Liability [1]

■ Schultz names Dick DeVos, Heidi Van de Grift, and Steve Ohman as individ-

---

1. Schultz also lists 42 U.S.C. § 1983. Section 1983 provides a cause of action "against any person who, acting under color of state law deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999). Nowhere in the Complaint does Schultz make any allegation regarding how these individuals may

ual defendants. It is well-settled that there is no individual liability for a supervisor or other individual employee under the ADA unless that person independently qualifies as an employer under the Act. *Sullivan,* 197 F.3d at 808 n. 1; *Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 404–05 (6th Cir.1997).

### *Conclusion*

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.

have acted under color of state law or were in any way liable under this section. The claim is dismissed.