McKEAGUE, Circuit Judge,
dissenting.
The majority holds that a telecommuting arrangement allowing an employee to telecommute four out of five days of the workweek on a spur-of-the-moment, unpredict *650 able basis is a reasonable accommodation under the ADA for a position that involves routine face-to-face interactions. The stated law of this circuit, however, is that attending work on a regular, predictable schedule is an essential function of a job in all but the most unusual cases, namely, positions in which all job duties can be done remotely. The majority further holds that an employee’s flat-out rejection of an employer’s offer to help her find another position does not constitute an alternative reasonable accommodation, despite the fact that the reason talks could not evolve to a point of identifying a specific position was because of the employee’s refusal to consider the possibility. Finally, the majority holds that terminating an employee for repeated performance and interpersonal shortfalls could be a pretext for discrimination, even when these shortfalls are undisputed, because the employee filed an EEOC charge. But this circuit requires more: the EEOC must prove that Ford’s proffered reason is pretext for discrimination, and this the EEOC fails to do. Rather than applying these well-established standards, the majority departs from precedent and fails to credit the overwhelming, uncontroverted evidence offered by Ford. Because I disagree with the majority’s analysis of the ADA discrimination claim as well as the ADA retaliation claim, I respectfully dissent.
I.
A.
The EEOC has simply failed to show that Harris could perform the essential functions of her job while telecommuting up to eighty percent of the workweek, or four out of five days, on an unpredictable schedule. The ADA protects qualified individuals “who, with or without reasonable accommodation, can perform the essential functions of the employment position[.]” 42 U.S.C. § 12111(8). The ADA requires courts to consider the employer’s business judgment when determining the essential functions of a job. Keith v. Cnty. of Oakland, 703 F.3d 918, 925 (6th Cir.2013). Moreover, this court has flatly held that “[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a qualified individual protected by the ADA.” See Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir.1998) (internal quotation marks omitted); see also Keith, 703 F.3d at 923 (“The ADA defines ‘discriminate’ to include the failure to provide reasonable accommodation to an otherwise qualified individual with a disability, unless doing so would impose an undue hardship on the employer’s business.”).
The majority states that Harris was a qualified individual based on two theories: either by eliminating the requirement of regular, predictable job attendance, or by permitting an unpredictable telecommuting arrangement that served as a workaround to regular job attendance. These “alternatives” are two sides of the same coin. Really, the EEOC’s ADA discrimination claim turns on one question, summed up by one of our sister circuits as follows: “Just how essential is showing up for work on a predictable basis?” Samper v. Providence Saint Vincent Med. Ctr., 675 F.3d 1233, 1235 (9th Cir.2012).[1]
*651 This circuit has already addressed that question, and held that “excessive absenteeism” renders an individual unqualified under the ADA as a matter of law, Brenneman v. MedCentral Health Sys., 366 F.3d 412, 419 (6th Cir.2004), except in the “unusual case where an employee can effectively perform all work-related duties at home” without a substantial reduction in the quality of performance, Smith v. Ameritech, 129 F.3d 857, 867 (6th Cir.1997) (emphasis added). The majority cannot contend that Harris’s circumstances constitute such an “unusual case,” and so the majority instead asserts that regular, predictable attendance is not an essential function of all jobs, states that Harris’s position does not actually require showing up for work — despite the undisputed evidence in the record that many resale buyer duties could not be done at home — and notes that technology has advanced. I would instead follow this court’s well-established precedent and affirm the district court’s grant of summary judgment to Ford.
This court’s precedent clearly states that an employee who cannot satisfy an employer’s basic attendance requirements is unqualified under the ADA as a matter of law. Brenneman, 366 F.3d at 418-19. We based our conclusion on evidence that the employee’s being absent from the workplace created strain on his coworkers, and on testimony from the employee’s supervisor that attendance was an essential function of the position. Id. at 420. Of course, Ford has presented such evidence here: Ford’s managers, as well as the other resale buyers, are in universal agreement that the resale buyer position requires face-to-face communications, and Harris’s
chronic, unpredictable absences — as well as the repeated errors she made while working from home — created considerable strain on the rest of the team. Yet the majority fails to credit this evidence, dismissing the commonsense conclusion that regular, predictable attendance is an essential function of almost every job, a move at odds with not only this circuit’s precedent but also the case law of our sister circuits. See, e.g., Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 33 (1st Cir.2011) (“This Court — as well as the majority of circuit courts — has recognized that attendance is an essential function of any job.” (internal quotation marks omitted)); Vandenbroek v. PSEG Power, CT LLC, 356 Fed.Appx. 457, 460 (2d Cir.2009) (noting that “regularly attending work is an essential function of virtually every job” (internal quotation marks omitted)); Mason v. Avaya Commc’ns, Inc., 357 F.3d 1114, 1119 (10th Cir.2004) (observing the conclusion of most courts that “physical attendance in the workplace is itself an essential function of most jobs”); EEOC v. Yellow Freight Sys., Inc., 253 F.3d 943, 949 (7th Cir.2001) (en banc) (“Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job.”); Davis v. Florida Power & Light Co., 205 F.3d 1301, 1306 (11th Cir.2000) (noting that job presence is “an essential function of a job”); Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1048 (8th Cir.1999) (“Further, it is axiomatic that in order for [an employee] to show that she could perform the essential firnc- *652 tions of her job, she must show that she is at least able to show up for work.”).
Moreover, we addressed whether the ADA compels employers to provide work-at-home arrangements in Smith v. Ameritech, and held that an employee’s requested accommodation to telecommute, in light of his job duties, was unreasonable as a matter of law. 129 F.3d at 867-68. We determined that it would only be the “unusual case where an employee can effectively perform all work-related duties at home” that would create a genuine issue of fact. Id. (emphasis added). We reasoned that the ADA does not require employers to permit work-at-home arrangements when they adversely affect productivity and work performance. Id. at 867. The EEOC falls far short of establishing that this is the “unusual case” because Harris cannot complete “all work-related duties at home.” Id. (emphasis added). I agree with the majority that teleconferencing is more commonplace today, and that the class of jobs in which all duties can be done at home has likely increased over the last few years. However, the fact that some other jobs may now fit these criteria does not help the EEOC’s case, because such abstractions do not transform the resale buyer position into one of the jobs in which all duties may be done from home.[2] Ford has offered overwhelming evidence to support its business judgment that impromptu meetings and problem-solving with the resale buyer team were most effectively handled face-to-face. The EEOC even concedes that the resale buyer position required in-person supplier-site visits, an important job duty that Harris by definition cannot perform from home. And yet the majority fails to credit-this evidence and apply this circuit’s well-established standard.
The evidence offered by the EEOC on which the majority rests its conclusion consists only of the fact that Ford provided other resale buyers with the option of telecommuting on a more limited basis, and Harris’s self-serving testimony that the “vast majority” of her job could be completed pursuant to a telecommuting arrangement. First, the EEOC’s mention of Ford’s telecommuting policy,[3] specifically Ford’s flexibility in offering other resale buyers the option of telecommuting one to two days per week on a predictable schedule — provided that the telecommuting resale, buyer would report to work should an emergency arise — does nothing to advance the EEOC’s claim that unpredictable attendance, or that telecommuting up to four days per week, is reasonable for resale buyers. The difference between one or two days versus four days speaks for itself. Furthermore, in ignoring the difference between predictable and unpredictable attendance,' the majority fails to recognize that an “employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance.” Basden v. Prof'l Transp., Inc., 714 F.3d 1034, 1037 (7th Cir.2013) (emphasis added).
*653 Second, Harris’s personal opinion that her work could be done via telecommuting is also insufficient to raise a genuine issue of fact. There is a good reason courts “are reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience.” Mason, 357 F.3d at 1122. This is because any employee could provide a court with “self-serving testimony” that her job was amenable to telecommuting. Id. Harris’s subjective opinion lacks any support in the record, as the universal judgment of all of Ford’s managers and the other resale buyers refutes what Harris claims. And the EEOC cannot contest the repeated pricing and reporting errors that Harris made while working from home. Without requiring more evidence than a plaintiffs self-serving testimony, the majority has dramatically reduced what a plaintiff must show in order to withstand a summary judgment motion in an ADA discrimination claim.
The majority, however, reasons that this case is different — not the “unusual case” described in our case law, see Ameritech, 129 F.3d at 867, but different — -because Harris’s position does not actually require face-to-face interactions. Except that it does: the record is clear that the position requires supplier-site visits, which by definition need to occur face-to-face.[4] It also bears mentioning that the position requires extensive teamwork with the resale buyer team, which includes impromptu meetings. I agree with our sister circuits that regularly attending work on a predictable schedule is an essential function of a job that requires such teamwork. See Samper, 675 F.3d at 1237 (“Sometimes [regular work attendance] is required simply because the employee must work as part of a team.” (internal quotation marks omitted)); Mason, 357 F.3d at 1122 (“[P]hysical attendance at the administration center was an essential function of the service coordinator position because the position required ... teamwork.”) Hypes v. First Commerce Corp., 134 F.3d 721, 727 (5th Cir.1998) (“Furthermore, he was a part of a team and the efficient functioning of the team necessitated the presence of all members ... it was critical to the performance of his essential functions for [the employee] to be present in the office regularly and as near as possible to normal business hours.”); Vande Zande v. Wisconsin Dep’t of Admin., 44 F.3d 538, 545 (7th Cir.1995) (“Most jobs in organizations public or private involve team work ... it would take a very extraordinary case for the employee to be able to create a triable issue of the employer’s failure to allow the employee to work at home.”). Even the EEOC’s own guidance recognizes that an employer is justified in refusing a telecommuting request when, among other things, it would be difficult for a telecommuting employee to participate in frequent “impromptu team meetings” to address ongoing developments. EEOC, Employer Best Practices for Workers with Caregiving Responsibilities, http://www.eeoc.gov/policy/ docs/caregiver-best-practices.html (last visited Feb. 11, 2014). Instead of acknowledging this commonsense notion, or affording deference to Ford’s business judgment, the majority does precisely what it claims not to do: it acts as a “super personnel *654 department,” deciding which positions actually require face-to-face interactions and which do not. See Mason, 357 F.3d at 1122 (internal quotation marks omitted).
Similarly unconvincing is the majority’s observation that “technology has advanced” or that the “world has changed.” The fact is that this circuit has reaffirmed the principle that regular attendance is an essential function of almost all jobs as recently as 2012. See Melange v. City of Ctr. Line, 482 Fed.Appx. 81, 84 (6th Cir.2012). But even holding this affirmance aside, I cannot identify anything in the record evidencing a change in the world, let alone anything in the majority opinion explaining how it is a new world in relation to this employee. In this case, the EEOC insists that most — -again, not all — of Harris’s work could be done using email or computers, and Harris claims that she could interact with stakeholders via conference call. While the majority dismisses our precedent in Ameritech and Brenne-man on the basis that these are “early cases,” it cannot be said that email, computers, or conference call capabilities were not available in 1997 or 2004, when these cases were decided. No new technologies are identified by the EEOC or the majority because none are implicated by the facts of this case. As to whether anything has specifically changed in the world with respect to this job in the years since Ameri-tech and Brenneman were decided, I can only conclude that the answer is no. I would follow this circuit’s well-established precedent and affirm the district court’s grant of summary judgment to Ford on the ADA discrimination claim.
B.
Harris also is not a qualified individual under the ADA for the separate reason that she rejected reasonable accommodations offered by Ford. “It is well-settled that ‘an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.’ ” Keever v. City of Middletown, 145 F.3d 809, 812 (6th Cir.1998) (quoting Hankins v. The Gap, 84 F.3d 797, 800-01 (6th Cir.1996)). And it is well-established that the “ultimate discretion to choose between effective accommodations” lies with the employer. Hankins, 84 F.3d at 800. Because Harris refused all of Ford’s offers to accommodate her, she cannot demand that Ford provide her with a wholly unpredictable telecommuting schedule.
The first accommodation that Harris refused was Ford’s offer to move Harris’s cubicle closer to the restroom. The majority is correct to note Harris’s testimony that she might soil herself merely by standing up, and so it is possible that this accommodation, when viewed in isolation, would not address the challenges caused by her medical condition. But Harris also refused to consider, either in conjunction with having her cubicle moved or separately, wearing Depends, a product designed for incontinence, which would have addressed that challenge. Harris also refused to consider, either in conjunction with having her cubicle moved or separately, bringing a change of clothes to the workplace, which would also have addressed that challenge.
The second accommodation that Harris refused was Ford’s offer to assist her in finding within Ford another position with duties more amenable to the frequent, unpredictable telecommuting schedule that she wanted. This court has held that an employer who offers an employee another position has offered that employee a reasonable accommodation. Keever, 145 F.3d at 813. Harris rejected Ford’s offer because she did not want to “start anew.” Unlike the majority, I would find that Harris’s refusal to even consider the possibility of another job does not raise an issue of material fact as to whether the offered *655 accommodation was reasonable. Clearly, the reason talks between Ford and Harris never evolved to a place where a specific position was identified was because of Harris’s unwillingness to entertain the idea.[5] Under the majority’s logic, had Harris not flat-out rejected Ford’s offer but considered it in earnest, only to later refuse to transfer to a different position out of a fear of “starting anew,” this would constitute a refusal of a reasonable accommodation. Apparently, an employee who is even less agreeable, who refuses the possibility of the idea at the onset, deserves a different outcome. I disagree. I would find that Harris’s flat-out rejection of Ford’s offer to transition her to a position more amenable to her scheduling needs did not render Ford’s proposed accommodation unreasonable. I would therefore affirm the district court’s grant of summary judgment to Ford on the ADA discrimination claim on this alternative basis.
II.
Secondly, the EEOC simply cannot demonstrate that Ford’s reason for terminating Harris’s employment was a pretext for discrimination. In this circuit, an employer’s “proffered reason cannot be proved to be a pretext ‘unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason.’ ” Harris v. Metro. Gov’t of Nashville & Davidson Cnty., Tenn., 594 F.3d 476, 486 (6th Cir.2010) (quoting Saint Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (emphasis in original). The EEOC cannot prove either of these points, and so summary judgment for Ford on the EEOC’s ADA retaliation claim should be affirmed.
The EEOC admits that Harris frequently did not complete her work and that she had numerous performance and interpersonal issues. Her performance issues included not updating spreadsheets, not doing paperwork, not scheduling required training sessions, not pricing items correctly, and not completing timetables for finishing projects. Her performance issues as well as her interpersonal difficulties caused Ford financial loss and harmed its customer service operations. The majority’s claim that a reasonable jury could find that Harris’s PEP was designed to set Harris up to fail is meritless given the fact that the parties do not dispute that the PEP tasks which Harris failed to complete — such as doing her paperwork — were important duties of the resale buyer position. Clearly, the fact that Harris’s performance was deficient is why her performance reviews suffered. The EEOC does not prove otherwise, thus the EEOC has not met its burden to prove that Ford’s proffered reason was false, or that discrimination was the real reason that Ford terminated her employment. See id. I would therefore affirm the district court’s grant of summary judgment to Ford on the ADA retaliation claim.
III.
My disagreement with the majority on the ADA discrimination and retaliation claims aside, it bears mentioning the unfortunate impact that this case will have on employees working for companies in this circuit. Again, the EEOC does not dispute that the resale buyer job required face-to-face interactions that cannot be done via telecommunication. Rather, dur *656 ing oral argument, the EEOC summed up its position as follows: “If that part of the [resale buyer] work is so critical and spontaneous that you can’t predict when it’s going to happen, then it doesn’t make sense for Ford to let anybody telecommute ever. Yet [Ford does] let people telecommute, people doing the exact same job as [Harris] is.” So the lesson for companies from this case is that, if you have a telecommuting policy, you have to let every employee use it to its full extent, even under unequal circumstances, even when it harms your business operations, because if you fail to do so, you could be in violation of the law. Of course, companies will respond to this case by tightening their telecommuting policies in order to avoid legal liability, and countless employees who benefit from generous telecommuting policies will be adversely affected by the limited flexibility. Especially in light of the fact that our precedent counsels otherwise, I find this outcome regrettable. For the reasons stated above, I respectfully dissent.

. In addressing regular workplace attendance in the context of ADA discrimination claims, the Ninth Circuit reasoned as follows:
Indeed, [the employee’s] request [to not show up for work] so far exceeds the realm of reasonableness that her argument leads to a breakdown in well-established ADA analysis. In most cases, the essential function and reasonable accommodation analy-ses are separate: first, a court inquires as to the job's essential functions, after which the plaintiff must establish that she can *651 perform those functions with or without reasonable accommodations. [Here, the employee] essentially asks for a reasonable accommodation that exempts her from an essential function, causing the essential functions and reasonable accommodation analyses to run together.
Samper, 675 F.3d at 1240 (internal citation omitted).

. Additionally, the majority’s discussion of flex-time arrangements as compared to telecommunication arrangements does not change the analysis. Again, the law of this circuit is that regular, predictable work attendance is essential except in veiy unusual cases. See Ameritech, 129 F.3d at 867. Harris's case simply does not meet that requirement. And the reality of the resale buyer position is that it requires in-person site visits and face-to-face teamwork, neither of which can be completed via telecommunication, regardless of whether Harris is available from home during normal work hours.

. It bears mentioning that Ford’s telecommuting policy makes clear that telecommuting is not an entitlement and that a specific telecommuting schedule unique to each employee must be approved in advance.

. Ford has in fact offered evidence to prove that Harris was unable to perform these site visits under her proposed arrangement. As the majority notes, Harris was absent from work more often than not. If Harris's condition is severe enough that she cannot reliably report to Ford’s facilities, then she would also not be able to reliably report to the supplier sites for the scheduled visits. Clearly, the fact that Harris could not complete the site visits on schedule is why she was forced to routinely cancel them at the last minute, a practice that frustrated Ford's suppliers.

. Not to mention, the record shows that Harris was difficult to engage in discussion. For example, during the meeting at which the resale buyer team attempted to allocate Harris's workload among the other team members, her coworkers initially found her confrontational. After Harris became emotional and fled the meeting, her coworkers later found her "screaming and crying” in the company restroom, which drove Ford to call security.